## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT J. STEVENS, | No. 4:15-CV-01929 |
| Petitioner, | (Chief Judge Brann) |
| v. | |
| JOHN RIVELLO, | |
| Respondent. | |

### MEMORANDUM OPINION

#### JULY 25, 2025

Petitioner Robert J. Stevens is currently incarcerated at the State Correctional Institution in Huntingdon, Pennsylvania, serving a sentence of 46 to 92 years' imprisonment. He originally filed the instant *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254 in this Court in 2015. Stevens, however, had filed a "mixed" Section 2254 petition containing both exhausted and unexhausted post-conviction claims. The Court accordingly stayed Stevens' federal habeas case, providing him the opportunity to raise—if he could—his numerous unexhausted post-conviction claims in state court. Approximately seven years have elapsed since that time, and Stevens now returns to federal court following his unsuccessful attempt at state-court exhaustion. Because Stevens' exhausted claims are meritless and his unexhausted claims are unreviewable, the Court will deny habeas relief.

## I.    BACKGROUND

In November 2010, following a jury trial, Stevens was found guilty of—among other serious offenses—aggravated assault, kidnapping, sexual assault, rape, robbery, burglary, and reckless endangerment.[1]  Stevens' trial consolidated two related criminal cases involving the same victim.[2]  The first case concerned a September 2009 incident where Stevens followed the victim in her vehicle, struck the victim's vehicle with his own, and forced her off the roadway.[3]

The second, more serious case involved events that occurred when Stevens was released on bail following his arrest for the first incident.[4]  On January 14, 2010, immediately after his release, he went to the victim's house (despite the existence of a temporary protection from abuse order), entered her home, and assaulted the victim by punching her in the face and head.[5]  He then stole $400 in cash from the victim's purse, forced her to write a personal check for $2,000 more, bound her with duct tape, and went outside to deliver the cash and check to the individuals who had posted his bail.[6]  When he came back inside, he continued to strike the victim until she lost consciousness.[7]  The victim further testified that,

---

[1]    *Commonwealth v. Stevens*, No. 1842 EDA 2014, 2015 WL 6164724, at *2 (Pa. Super. Ct. Apr. 27, 2015) (nonprecedential).

[2]    *See id.*, at *1.

[3]    *Id.*

[4]    *Id.*

[5]    *Id.*

[6]    *Id.*

[7]    *Id.*

when she momentarily regained consciousness, she was on the living room floor and Stevens was having sexual intercourse with her.[8]

Stevens later attempted to transport the victim in her father's truck, but drove off the roadway and struck a tree.[9] He then changed vehicles, removed the victim from the crashed truck, and took her to an out-of-state motel for the night.[10] The next day, with the help and planning of mutual friends, the victim was driven to the Pennsylvania State Police barracks and Stevens was apprehended.[11] As noted above, following the consolidated jury trial, he was convicted on all counts charged.

In June 2011, Stevens was sentenced to an aggregate term of 46 to 92 years' incarceration.[12] He appealed, raising two claims of trial court error.[13] He first asserted that the trial court had erred by allowing "Trooper Thomas Slavin to testify regarding blood spatter patterns when a report was never provided to defense regarding what his expert testimony would be and in fact, defense counsel was never informed that the Commonwealth would be calling him as an expert on blood splatter [sic] patterns[.]"[14] In his second claim, Stevens contended that the

---

[8]  *Id.*
[9]  *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *See generally Commonwealth v. Stevens*, No. 3077 EDA 2011, 2013 WL 11273266 (Pa. Super. Ct. Mar. 7, 2013) (nonprecedential).
[14] *See id.*, at *2.

trial court had violated his Sixth Amendment right to present a defense when it refused to permit defense counsel to question the victim regarding an alleged history of "consensual bondage" with Stevens during their relationship, when the prosecution had alleged that Stevens had held the victim against her will and the victim had testified that Stevens had bound her with duct tape.[15]

The Superior Court affirmed Stevens' judgment of sentence on March 7, 2013.[16]  He did not file a petition for allowance of appeal with the Supreme Court of Pennsylvania, and thus his convictions and sentence became final on April 8, 2013, when the time for seeking such review expired.[17]

Stevens timely filed a *pro se* petition under Pennsylvania's Post Conviction Relief Act (PCRA)[18] on July 24, 2013.[19]  PCRA counsel was appointed and filed an amended petition.[20]  The amended petition presented two claims of ineffective assistance of counsel, alleging that trial counsel had failed to (1) file a pretrial motion to sever the cases, and (2) file a pretrial motion under Pennsylvania's Rape Shield Law to admit prior instances of sexual encounters with the victim involving

---

[15] *Id.*

[16] *See id.*, at *1, *6.

[17] *See* PA. R. APP. P. 1113(a) (requiring, generally, that petition for allowance of appeal be filed within 30 days after entry of appellate court order sought to be reviewed); 28 U.S.C. § 2244(d)(1)(A); *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012) (holding that, if petitioner does not appeal conviction to state's highest court, judgment becomes "final" for AEDPA purposes when time for seeking such review in state's highest court expires); *Tomlin v. Britton*, 448 F. App'x 224, 226 (3d Cir. 2011) (nonprecedential) (same).

[18] 42 PA. CONS. STAT. § 9541 *et seq.*

[19] *See Stevens*, No. 1842 EDA 2014, 2015 WL 6164724, at *2.

[20] *Id.*

"consensual bondage and rough sexual intercourse."[21]  On April 27, 2015, the

Superior Court affirmed the PCRA court's denial of Stevens' PCRA petition,[22] and

once again he did not petition for allowance of appeal with the Supreme Court of

Pennsylvania.

Stevens lodged his Section 2254 petition in this Court on October 5, 2015.[23]

His petition spans 40 pages, raising a multitude of claims alleging ineffective

assistance of trial, appellate, and PCRA counsel; prosecutorial misconduct;

insufficiency of the evidence; and purported interference by prison officials in his

pursuit of post-conviction relief.[24]  Those claims are more fully set forth in this

Court's July 12, 2018 Memorandum Opinion.[25]  As that decision explains,

however, Stevens only exhausted a total of four claims between his direct appeal

and state collateral review.[26]  None of the other claims contained in his Section

2254 petition had been properly presented to the state courts, pressed through one

complete round of appellate review, and decided on the merits.

Erring on the side of caution, the Court concluded that it would stay

Stevens' federal habeas proceedings and give him the opportunity to present his

numerous unexhausted claims in state court.[27]  The Court, however, dismissed all

---

[21]  *Id.*, at *2, *4.

[22]  *Id.*, at *1, *5.

[23]  Doc. 1 at 1-16; Doc. 2 at 1-24.

[24]  *See* Doc. 2 at 1-24.

[25]  *See* Doc. 23 at 3-5.

[26]  *See id.* at 11.

[27]  *See id.* at 12-13 (citing *Crews v. Horn*, 360 F.3d 146, 154 (3d Cir. 2004)).

claims sounding in ineffective assistance of PCRA counsel and interference by prison officials in the post-conviction proceedings, as those claims clearly were not cognizable on federal habeas review.[28]  The Court directed Stevens to promptly file written notice with this Court following state exhaustion and then administratively closed his case.[29]

Nearly seven years later, on April 16, 2025, Stevens returned to federal court, alleging that he had attempted to exhaust his previously unexhausted claims.[30]  However, the PCRA court ultimately determined that those claims were statutorily time barred and that it lacked jurisdiction to consider Stevens' second PCRA petition.[31]  The Superior Court affirmed, agreeing that Stevens' second PCRA petition was filed well out of time and was thus jurisdictionally barred, and noting that Pennsylvania has long held that the PCRA's time limitations are "not tolled during federal review."[32]  Once again, it does not appear that Stevens petitioned for allowance of appeal with the Pennsylvania Supreme Court.

Stevens' Section 2254 petition is now ripe for review.  The Court will, accordingly, lift the stay in this case and consider Stevens' claims for federal habeas relief.

---

[28]  *See id.* at 6-7 (citing 28 U.S.C. § 2254(i)); Doc. 24 ¶ 1.
[29]  Doc. 24 ¶¶ 4-5.
[30]  *See* Doc. 25.
[31]  *See Commonwealth v. Stevens*, Nos. 326 EDA 2024, 327 EDA 2024, 2025 WL 659136, at *1 (Pa. Super. Ct. Feb. 27, 2025) (nonprecedential).
[32]  *See id.*, at *2-3 (citing *Commonwealth v. Fahy*, 737 A.2d 214, 222-23 (Pa. 1999)).

## II.    DISCUSSION

At the outset, the Court must determine which of Stevens' multitudinous claims are cognizable on federal habeas review.  This is no small task and requires a careful exhaustion analysis as well as review of the claims themselves.

### A.    Unexhausted Claims

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)[33] mandates that petitioners demonstrate that they have "exhausted the remedies available in the courts of the State" before seeking federal habeas relief.[34]  An exhausted claim is one that has been "fairly presented" to the state courts "by invoking one complete round of the State's established appellate review process," and which has been adjudicated on the merits.[35]

If a state prisoner has not fairly presented a claim to the state courts "but state law clearly forecloses review, exhaustion is excused, but the doctrine of procedural default may come into play."[36]  Generally, if a prisoner has procedurally defaulted on a claim by failing to raise it in state-court proceedings, a federal habeas court will not review the merits of the claim, even one that implicates constitutional concerns.[37]

---

[33]  28 U.S.C. §§ 2241–2254.

[34]  *Id.* § 2254(b)(1)(A).

[35]  *Carpenter v. Vaughn*, 296 F.3d 138, 146 (3d Cir. 2002) (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999)); *see also Johnson v. Williams*, 568 U.S. 289, 302 (2013).

[36]  *Carpenter*, 296 F.3d at 146 (citations omitted).

[37]  *Martinez v. Ryan*, 566 U.S. 1, 9 (2012) (citing *Coleman v. Thompson*, 501 U.S. 722, 747-48 (1991); *Wainwright v. Sykes*, 433 U.S. 72, 84-85 (1977)).

A few limited exceptions to this rule exist. One exception is that "[a] prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law."[38] "Cause for a procedural default exists where something *external* to the petitioner, something that cannot fairly be attributed to him[,] . . . impeded [his] efforts to comply with the State's procedural rule."[39] To establish prejudice, a petitioner must show not merely that there were errors that created a possibility of prejudice, but that they "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."[40] If cause and prejudice are established, the federal court reviews the claim *de novo* "because the state court did not consider the claim on the merits."[41]

Another rare exception that will excuse a procedural default is if the petitioner can show that "failure to consider the claim will result in a fundamental 'miscarriage of justice.'"[42] To satisfy the "fundamental miscarriage of justice" exception, a petitioner typically will have to show actual innocence.[43]

---

[38] *Id.* at 10 (citing *Coleman*, 501 U.S. at 750).

[39] *Maples v. Thomas*, 565 U.S. 266, 280 (2012) (alterations in original) (citations and internal quotation marks omitted).

[40] *Holland v. Horn*, 519 F.3d 107, 112 (3d Cir. 2008) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).

[41] *Bey v. Superintendent Greene SCI*, 856 F.3d 230, 236 (3d Cir. 2017), *cert. denied sub nom. Gilmore v. Bey*, 138 S. Ct. 740 (2018) (mem.) (citation omitted).

[42] *Carpenter*, 296 F.3d at 146 (quoting *Coleman*, 501 U.S. at 750).

[43] *Leyva v. Williams*, 504 F.3d 357, 366 (3d Cir. 2007) (citation omitted).

As recounted above, Stevens raised a total of four claims on direct appeal and during PCRA appeal that were adjudicated on the merits. Those claims—if reasserted in his Section 2254 petition—would be properly exhausted for AEDPA purposes. Stevens' habeas petition, however, contains dozens of other claims (alleging ineffective assistance of counsel, insufficiency of the evidence, and prosecutorial misconduct), which were never *properly* presented to the state courts or adjudicated on the merits.

Although it is true that Stevens returned to state court and attempted to exhaust these additional claims,[44] that attempt was fruitless. The PCRA court held, and the Superior Court affirmed, that Stevens' second PCRA petition was filed well beyond the PCRA's one-year statute of limitations, Stevens had not established that any of the statutory exceptions to the limitations period applied, and thus his second petition was jurisdictionally barred from review. Accordingly, none of the additional claims Stevens presented in his second PCRA petition were

---

[44]  In state court, Stevens filed—as his second PCRA petition—this Court's July 12, 2018 Memorandum Opinion along with a single sentence: "And Now Comes [Petitioner] with the Motion for Evidentiary Hearing on Unexhausted Claims, Pursuant to a Federal Court Decision by the Honorable Judge Brann (See Attached Order) which Granted [Petitioner] Leave to do so." *Stevens*, Nos. 326 EDA 2024, 327 EDA 2024, 2025 WL 659136, at *1 (quoting "PCRA Court Opinion, 8/30/19, at 9"). Stevens did not file the underlying federal habeas corpus petition itself. *See id.* The PCRA court ultimately held that Stevens' reliance on this Court's Memorandum Opinion as the sole pleading in his second round of PCRA proceedings "was not sufficient to plead and prove the timeliness" of his second PCRA petition. *Id.* That holding was affirmed by the Superior Court on appeal. *See id.*, at *1, *3.

properly exhausted within the meaning of the AEDPA; rather, they were procedurally defaulted.[45]

To overcome procedural default and permit federal habeas review of these claims, Stevens bears the burden of establishing both cause and prejudice for _each_ claim. His sole argument to excuse procedural default rests on the holding of _Martinez v. Ryan_, 566 U.S. 1 (2012).[46]

In _Martinez_, the Supreme Court of the United States carved out a "narrow exception" to procedural default. Specifically, _Martinez_ holds that "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial."[47] _Martinez_ also recognizes that a finding of cause and prejudice to excuse procedural default "does not entitle the prisoner to habeas relief. It merely allows a federal court to consider the merits of a claim that otherwise would have been procedurally defaulted."[48]

---

[45]  _See Johnson v. Sup't, Mahanoy SCI_, __ F.4th __, __, 2025 WL 1922769, at *3 (3d Cir. 2025) (observing that two federal habeas claims were "barred by Pennsylvania's statute of limitations and so were procedurally defaulted in state court"); _Bronshtein v. Horn_, 404 F.3d 700, 707-10 (3d Cir. 2005) (explaining that since late 1990s, it has been "firmly established and regularly followed" that PCRA's one-year statute of limitations is jurisdictional and "thus not subject to judicial relaxation" and, therefore, a PCRA petition barred by that statute's limitations period results in procedural default of the claims therein).

[46]  _See_ Doc. 20 at 4-6.

[47]  _Martinez_, 566 U.S. at 9.

[48]  _Id._ at 17.

To successfully invoke the *Martinez* exception, a petitioner must satisfy two requirements: (1) the petitioner's underlying, otherwise defaulted claim of ineffective assistance of trial counsel must be "substantial," meaning that it has "some merit"; and (2) the petitioner had "ineffective" counsel—under the standard set forth in *Strickland v. Washington*[49]—or "no counsel" during the initial phase of state collateral review.[50]

Stevens' undeveloped, blanket invocation of *Martinez* is both partially misplaced and wholly insufficient to excuse his procedural default. First, Stevens raises numerous habeas claims that do not implicate the narrow exception to procedural default provided by *Martinez*. His constitutional claims sounding in insufficient evidence, prosecutorial misconduct, and ineffective assistance of direct appeal counsel[51] are not covered by the *Martinez* exception and therefore remain procedurally defaulted and unreviewable.

As to the defaulted trial-counsel-ineffectiveness claims to which *Martinez* theoretically could apply, Stevens has failed to carry his burden to demonstrate the two *Martinez* requirements for any such claim. Liberally construed, Stevens' Section 2254 petition asserts <u>dozens</u> of procedurally defaulted claims alleging

---

[49]    466 U.S. 668 (1984).

[50]    *Id.* at 14; *Workman v. Superintendent Albion SCI*, 915 F.3d 928, 937-38 (3d Cir. 2019).

[51]    *See Davila v. Davis*, 582 U.S. 521, 524-25 (2017) (holding that *Martinez* exception only applies to defaulted claims of trial counsel ineffectiveness and does not extend to defaulted claims of ineffective assistance of appellate counsel).

ineffective assistance of trial counsel.  Nowhere, however, does Stevens establish that any particular ineffectiveness claim is "substantial" or that his PCRA counsel was constitutionally deficient for failing to raise it in initial-review collateral proceedings.  Without discussing, much less establishing, these bare minimum requirements for invoking the *Martinez* exception, Stevens has not carried his burden to excuse procedural default of these unexhausted claims.[52]

Stevens attempts to circumvent his burden by simply asserting that all his defaulted claims are reviewable because his PCRA counsel failed to include them in the amended PCRA petition and Stevens could not raise them on his own because Pennsylvania forbids hybrid representation.[53]  He argues that his PCRA counsel was ineffective because that attorney should have known that the PCRA court would not countenance claims raised during the evidentiary hearing that were not contained in the amended PCRA petition.[54]

But this alleged procedural misstep is not the ineffectiveness that matters for the *Martinez* exception.  Rather, *Martinez* requires a petitioner to show that—by failing to assert a "substantial" claim of ineffective assistance of trial counsel in initial-review collateral proceedings—PCRA counsel's representation fell below

---

[52]  The most that Stevens does is assert that he provided a list of claims he wanted his PCRA attorney to raise in the amended PCRA petition. *See* Doc. 20 at 5; Doc. 20-1 at 5-6.  But simply asking counsel to raise <u>19</u> additional claims falls far short of demonstrating that any particular claim is substantial or that PCRA counsel violated the constitution by failing to raise it.

[53]  *See* Doc. 20 at 5.

[54]  *See id.*

the constitutional minimum. Stated differently, the petitioner must demonstrate that by failing to raise a substantial trial-counsel-ineffectiveness claim in initial-review collateral proceedings, PCRA counsel's performance was "not within the range of competence demanded of attorneys in criminal cases" and "fell below an objective standard of reasonableness."[55]

Stevens has not made or even attempted to make this demanding showing[56] for *any* of his defaulted trial-counsel-ineffectiveness claims. In fact, there is no discussion whatsoever regarding the *Martinez* requirements in Stevens' habeas filings. Consequently, he has not established that the *Martinez* exception applies to excuse procedural default of any specific claim, and therefore his numerous procedurally defaulted trial-counsel-ineffectiveness claims are unreviewable.

## B.    Exhausted Claims

The Court thus turns to the four claims that Stevens properly exhausted through one complete round of appellate review. Only three of these claims are cognizable on federal habeas review.

### 1.    Claims Exhausted on Direct Appeal

As noted above, Stevens raised two claims on direct appeal: (1) the trial court erred by permitting Trooper Slavin to provide expert testimony as to blood

---

[55] *Strickland*, 466 U.S. at 687-88 (citations omitted); *see Workman v. Sup't Albion SCI*, 915 F.3d 928, 939-41 (3d Cir. 2019).

[56] *See Workman*, 915 F.3d at 938 (citing *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986) (noting that *Strickland* standard is "highly demanding")).

spatter pattern; and (2) the trial court violated Stevens' Sixth Amendment right to present a defense when it refused to permit defense counsel to question the victim regarding an alleged history of "consensual bondage."

Only the latter claim is subject to federal review. It is well settled that challenges to evidentiary rulings based on state law and state rules of evidence are not cognizable on federal habeas review.[57] Put simply, "federal habeas corpus relief does not lie for errors of state law."[58]

Nowhere in his state-court filings or the instant Section 2254 petition does Stevens allege that the trial court's evidentiary ruling with respect to Trooper Slavin's testimony resulted in an error of *constitutional* magnitude.[59] Stevens' state-court evidentiary challenge alleged trial court error and violation of the Pennsylvania Rules of Evidence; he never claimed that the at-issue evidentiary ruling violated the constitution, due process, or his right to a fair trial.[60]

---

[57] *See Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (explaining that inquiry regarding evidentiary ruling based on state law "is no part of a federal court's habeas review of a state conviction"); *see also Smith v. Horn*, 120 F.3d 400, 414 (3d Cir. 1997) ("[A] state court's misapplication of its own law does not generally raise a constitutional claim. The federal courts have no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension.").

[58] *Estelle*, 502 U.S. at 67 (citations omitted).

[59] *See* Doc. 16-13, Brief of Petitioner-Appellant on Direct Appeal, at 9, 13, 14-16; *Stevens*, No. 3077 EDA 2011, 2013 WL 11273266, at *2, *3; *see also Keller v. Larkins*, 251 F.3d 408, 416 n.2 (3d Cir. 2001) ("A federal habeas court . . . cannot decide whether the evidence in question was properly allowed under the state law of evidence. A federal habeas court is limited to deciding whether the admission of the evidence rose to the level of a due process violation[.]").

[60] *See Stevens*, No. 3077 EDA 2011, 2013 WL 11273266, at *3-4; c*f. McCandless v. Vaughn*, 172 F.3d 255, 262 (3d Cir. 1999) ("[Petitioner] presented his 'prosecutorial vouching' claim to Pennsylvania's courts as an evidentiary law challenge and not as a violation of a federal or constitutional right. He did not assert this claim in terms that bring to mind a constitutional

Consequently, the state courts had no opportunity to consider any such constitutional claim.  Thus, to the extent that Stevens' Section 2254 petition can be construed as reasserting the first evidentiary challenge he raised on direct appeal,[61] that state-law claim is not cognizable on federal habeas review.

Stevens' second claim on direct appeal alleged that the trial court violated his Sixth Amendment right to present a defense by failing to permit cross-examination of the victim regarding a history of consensual sexual bondage with Stevens.  This claim was properly raised in the trial court and presented to the Pennsylvania Superior Court on appeal.

When a claim is properly exhausted and then raised on federal habeas review, the level of deference afforded to the state court decision is substantial.[62] The AEDPA "does not 'permit federal judges to . . . casually second-guess the decisions of their state-court colleagues or defense attorneys.'"[63]  Thus, under Section 2254(d), federal habeas relief is unavailable for exhausted claims unless the state-court adjudication "resulted in a decision that was contrary to, or involved

---

right.  On the contrary, his Superior and Pennsylvania Supreme Court briefs articulated this claim in terms similar to a Rule 403 objection, contending that the cooperation agreement testimony was 'irrelevant' and 'prejudicial' and therefore improperly admitted.  Nowhere are the terms 'constitution,' 'due process' or even 'fair trial' mentioned.").

[61] *See* Doc. 2 at 9 ¶ 39 (alleging that prosecution "ambush[ed] the defense in failing to provide a summary of the 'Expert Witness' findings and proposed testimony and 'last minute' change of person proposed to testify").

[62] *Bey*, 856 F.3d at 236.

[63] *Collins v. Sec'y of Pa. Dep't of Corr.*, 742 F.3d 528, 543 (3d Cir. 2014) (quoting *Burt v. Titlow*, 571 U.S. 12, 15 (2013)).

an unreasonable application of, clearly established Federal law . . . or resulted in a

decision that was based on an unreasonable determination of the facts in light of

the evidence presented in the State court proceeding."[64]  An unreasonable

application of Supreme Court precedent includes situations where "the state court

identifies the correct governing legal rule . . . but unreasonably applies it to the

facts of the particular state prisoner's case."[65]

This is an intentionally difficult standard to meet.[66]  Section 2254(d)

"preserves authority to issue the writ in cases where there is no possibility

fairminded jurists could disagree that the state court's decision conflicts with"

clearly established Supreme Court precedent.[67]  Thus, to obtain federal habeas

relief on an exhausted claim, a state prisoner must demonstrate that the state

court's ruling on the claim "was so lacking in justification that there was an error

well understood and comprehended in existing law beyond any possibility of

fairminded disagreement."[68]

As the Pennsylvania Superior Court noted, Stevens' claim regarding cross-

examination of an alleged rape victim about past sexual conduct implicates

Pennsylvania's Rape Shield Law, 18 PA. CONS. STAT. § 3104.  "The Rape Shield

---

[64]  28 U.S.C. § 2254(d).

[65]  *White v. Woodall*, 572 U.S. 415, 425 (2014) (quoting *Williams v. Taylor*, 529 U.S. 362, 407 (2000)).

[66]  *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

[67]  *Id.*

[68]  *Id.* at 103.

Law is intended to exclude irrelevant and abusive inquiries regarding prior sexual conduct of sexual assault complainants."[69]  Moreover, the Pennsylvania Supreme Court has explained that the purpose of the Commonwealth's Rape Shield Law is "to prevent a sexual assault trial from degenerating into an attack upon the collateral issue of the complainant's reputation rather than focusing on the relevant legal issues and the question of whether the events alleged by the complainant against the defendant actually occurred."[70]

Under the Rape Shield Law's general rule in effect at the time of Stevens' offenses,

> "Evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions under this chapter *except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue* and such evidence is otherwise admissible pursuant to the rules of evidence."[71]

Stevens' claim of past consensual sexual bondage with the victim is an exact fit for the exception written into the general rule.  That is, while past instances of sexual conduct of the complainant would generally be inadmissible in a rape trial, they are admissible when the defendant is claiming consensual sexual intercourse as a defense to a charge of rape (and the evidence is otherwise admissible).

---

[69]   *Commonwealth v. Burns*, 988 A.2d 684, 689 (Pa. Super. Ct. 2009) (citation omitted).

[70]   *Commonwealth v. Jones*, 826 A.2d 900, 908 (Pa. Super. Ct. 2003) (citing *Commonwealth v. Berkowitz*, 641 A.2d 1161, 1165 (Pa. 1994)).

[71]   18 PA. CONS. STAT. § 3104(a) (2014) (emphasis added).

Nevertheless, when the "consent exception" in Section 3104(a) is implicated, the defendant must follow the procedure set forth in Section 3104(b) if he intends to introduce that evidence at trial.[72]  In Stevens' case, it is undisputed that his trial attorney did not follow the mandatory steps found in Section 3104(b) to introduce evidence of past instances of consensual sexual bondage between Stevens and the victim.[73]  Accordingly, and as the Superior Court correctly determined, there was no Sixth Amendment violation by the trial court when it prohibited cross-examination of the victim about past instances of consensual sexual bondage.[74]  Stevens' trial counsel never filed a written motion and offer of proof at or before trial, and thus such evidence was plainly inadmissible pursuant to Pennsylvania's Rape Shield Law.[75]

Stevens argues in his Section 2254 petition that "the Rape Shield Law is inapplicable" to his case because he was asserting consensual sexual intercourse as a defense to rape and thus met the exception in Section 3104(a).[76]  Stevens is incorrect.  As *Commonwealth v. Majorana* makes clear, once a criminal defendant

---

[72]    *See Commonwealth v. Majorana*, 470 A.2d 80, 84 (Pa. 1983) ("The second stage (18 Pa.C.S. § 3104(b)) requires a defendant who seeks to introduce evidence of past sexual conduct under the consent exception in Section 3104(a) to 'file a written motion and offer of proof at the time of trial' at which time the court will determine 'if the motion and proof are sufficient on their faces.' If so, the court will hold an *in camera* hearing and 'make findings on the record as to the relevance and admissibility of the proposed evidence.'" (quoting 18 PA. CONS. STAT. § 3104(b) (1983))).

[73]    *See Stevens*, No. 3077 EDA 2011, 2013 WL 11273266, at *6.

[74]    *See id.*

[75]    *See id.*

[76]    *See* Doc. 2 at 1 ¶ 4.

satisfies the "consent exception" set forth in Section 3104(a), he must then proceed to the "second stage," *i.e.*, Section 3104(b), whereby he must file a written motion and offer of proof at the time of trial.[77]  Stevens likely met the consent exception found in Section 3104(a), but he did not file a written motion and offer of proof as required by Section 3104(b).  So his Sixth Amendment right to present a defense was not violated by the preclusion of the at-issue evidence.  Therefore, to the extent that Stevens reasserts this Sixth Amendment claim in his Section 2254 petition, no relief is due.

### 2.    Claims Exhausted on PCRA Appeal

The Court next turns to Stevens' PCRA appeal.  There, Stevens again raised and exhausted two claims: (1) ineffective assistance of trial counsel for failing to file a pretrial motion to sever, and (2) ineffective assistance of trial counsel for failing to file a pretrial motion under the Rape Shield Law.

A collateral attack based on ineffective assistance of counsel is governed by the familiar two-pronged test set forth in *Strickland v. Washington*.[78]  To prevail on such a claim, a defendant must demonstrate that (1) counsel's representation fell below an objective level of reasonableness based on prevailing professional norms,

---

[77]    *See Majorana*, 470 A.2d at 610.
[78]    466 U.S. 668 (1984).

and (2) the deficient representation was prejudicial.[79]  The defendant bears the burden of proving both prongs.[80]

In determining whether counsel has satisfied the objective standard of reasonableness under the first prong, courts must be highly deferential toward counsel's conduct.[81]  There is a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance.[82]  Only a "rare claim" of ineffectiveness of counsel should succeed "under the properly deferential standard to be applied in scrutinizing counsel's performance."[83]

To satisfy the prejudice prong, the defendant must establish a reasonable probability that, but for counsel's errors, the outcome of the proceeding would have been different.[84]  The court need not conduct its analysis of the two prongs in a particular order or even address both prongs of the inquiry if the defendant makes an insufficient showing on one.[85]

When a claim of ineffective assistance of counsel has been exhausted in state court, review of that claim by a federal habeas court is significantly circumscribed.  The federal court does not review the ineffectiveness claim *de novo*; rather, "[t]he pivotal question is whether the state court's application of the

---

[79]  *Strickland*, 466 U.S. at 687-88.

[80]  *See id.* at 687.

[81]  *Id.* at 689.

[82]  *See United States v. Gray*, 878 F.2d 702, 710 (3d Cir. 1989).

[83]  *Id.* at 711 (citing *Strickland*, 466 U.S. at 689-90).

[84]  *Strickland*, 466 U.S. at 694.

[85]  *See id.* at 697; *United States v. Lilly*, 536 F.3d 190, 196 (3d Cir. 2008).

*Strickland* standard was unreasonable."[86]  Under this "doubly" deferential

standard, "so long as fairminded jurists could disagree on the correctness of the

state court's decision," a state court's determination that a *Strickland* claim lacks

merit precludes federal habeas relief.[87]

   During PCRA proceedings, Stevens argued that his trial counsel's failure to

move to sever his consolidated trial had prejudiced him by permitting "details

regarding the first [car crash] incident to be admitted into evidence, thereby

allowing the jury to infer that there was a motive for his commission of the crimes

in the second [assault, rape, and kidnapping] incident."[88]  The Superior Court flatly

rejected this argument.  The panel explained that, even if more effective counsel

had been successful in severing the cases, evidence concerning the first incident

would have been admissible at the trial for the second incident to show "motive"—

an express permissible use for other act evidence provided by Pennsylvania Rule

of Evidence 404(b)(2).[89]

   The Superior Court's application of *Strickland* was both reasonable and

correct.  At no time has Stevens established that this alleged misstep by trial

counsel resulted in *Strickland* prejudice.  As both the PCRA court[90] and the state

---

[86]   *Harrington*, 562 U.S. at 101 (emphasis added); *Collins v. Sec'y Pa. Dep't of Corr.*, 742 F.3d 528, 546-47 (3d Cir. 2014).

[87]   *Harrington*, 562 U.S. at 101, 105 (citation omitted).

[88]   *Stevens*, No. 1842 EDA 2014, 2015 WL 6164724, at *3.

[89]   *See id.*

[90]   *See Commonwealth v. Stevens*, Nos. 245 CR 2010, 246 CR 2010, 2014 WL 8107138, at *3-4 (Pa. Ct. Com. Pl. Monroe Cnty. June 9, 2014).

appellate court[91] determined, evidence of Stevens' prior conduct regarding the first incident would have been admissible to establish motive at a separate trial for the second, more serious incident. Furthermore, the state court found that the evidence's probative value far outweighed its danger for unfair prejudice.[92]

Nowhere has Stevens rebutted the admissibility of this other act evidence under Pennsylvania Rule of Evidence 404(b). Although he argues that the two incidents were not a "continuing course of conduct,"[93] he does not explain how the prior act evidence would not have been admissible to show motive. Accordingly, evidence of the first incident would have come before the jury regardless of whether the two cases were tried separately or consolidated. Without being able to show he was prejudiced by a failure to sever the cases for trial, Stevens cannot establish the second element of his *Strickland* claim. Thus, because the state court's application of *Strickland* was both reasonable and correct, no habeas relief is due.

Stevens' final cognizable Section 2254 claim alleges that his trial counsel was ineffective for failing to file a pretrial motion under the Rape Shield Law to admit evidence of the victim's prior consensual sexual bondage with Stevens. The

---

[91] *See Stevens*, No. 1842 EDA 2014, 2015 WL 6164724, at *3.
[92] *See id.*, at *3 & n.16
[93] *See* Doc. 20 at 7-8.

Superior Court appears to have determined that there was neither deficient performance by trial counsel nor prejudice.[94]

This Court harbors significant doubt regarding whether trial counsel performed reasonably.  Stevens' defense at trial to the rape charges was that the sexual contact with the victim on January 14, 2010, was consensual (as they had previously been in a long-term relationship).  Evidence of prior consensual sexual bondage would have been an important fact to make known to the jury, especially because Stevens had been charged with two separate felony rape offenses: rape by forcible compulsion (18 PA. CONS. STAT. § 3121(a)(1)), and rape of an unconscious victim (18 PA. CONS. STAT. § 3121(a)(3)).[95]  The Section 3121(a)(1) forcible-compulsion rape charge presumably involved the victim being bound by either duct tape or rope, and evidence of the victim being bound (including pictures of duct tape in various rooms and rope in the bedroom) was introduced at trial by the prosecution.[96]

Nevertheless, the Court agrees with the state court insofar as Stevens has failed to establish *Strickland* prejudice.  That prong was correctly and reasonably applied.  Even if Stevens had been able to cross-examine the victim about prior instances of consensual sexual bondage (or proffer other evidence thereof), there is

---

[94]  *See Stevens*, No. 1842 EDA 2014, 2015 WL 6164724, at *4-5.

[95]  *See Stevens*, No. 3077 EDA 2011, 2013 WL 11273266, at *5 n.6.

[96]  *See id.*, at *4-5; Doc. 16-24 at 4 (listing trial exhibits that include photographs of duct tape, rope and twine from the bed, and a purple noose).

not a reasonable probability that such evidence would have resulted in a different outcome.

That is because, as the state court aptly explained, there was "overwhelming evidence" presented at trial indicating that the sexual intercourse on the day in question was "wholly nonconsensual and by forcible compulsion."[97]  That evidence included, *inter alia*, damning testimony from the victim regarding her recollection of the brutal assault, rape, robbery, and kidnapping[98]; testimony, photographs, and medical records establishing the significant injuries and bruising the victim sustained to her face and head (injuries which a Commonwealth expert testified were inconsistent with the subsequent automobile accident)[99]; and the existence of a temporary protection from abuse order the victim had obtained mere days before the January 14, 2010 incident and which Stevens clearly violated.[100]

Simply put, this compelling evidence of nonconsensual intercourse—*i.e.*, rape—on the day in question would render evidence of prior consensual sexual bondage inconsequential.  That is, even if Stevens and the victim had previously engaged in consensual sexual bondage, the overwhelming evidence presented at trial regarding the January 14, 2010 events firmly established that the sexual intercourse that day was *anything but* consensual.  Thus, even if Stevens' trial

---

[97]  *Stevens*, Nos. 245 CR 2010, 246 CR 2010, 2014 WL 8107138, at *5.
[98]  *See* Doc. 16-23, 10/26/2010 Trial Tr. Vol. I at 56:18-66:20, 86:3-15.
[99]  *See id.* at 65:21-68:13; *Stevens*, No. 1842 EDA 2014, 2015 WL 6164724, at *5.
[100]  *See* Doc. 16-23, 10/26/2010 Trial Tr. Vol. I at p. 3, 55:1-13, 106:3-9.

counsel had properly followed the dictates of Section 3104(b) and then cross-examined the victim about prior consensual bondage, there is no reasonable probability that the outcome of the trial would have been different.

The state court's application of the *Strickland* prejudice prong on this claim was both reasonable and correct.  Therefore, no relief is due on Stevens' final cognizable habeas claim.

## III.    CONCLUSION

For the foregoing reasons, the Court will deny Stevens' petition for a writ of habeas corpus under 28 U.S.C. § 2254.  The Court likewise declines to issue a certificate of appealability, as Stevens has failed to make a substantial showing of the denial of a constitutional right,[101] or that "jurists of reason would find it debatable" whether this Court's procedural ruling is correct.[102]  An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[101]  28 U.S.C. § 2253(c)(2).
[102]  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).